UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,  :

                                :

             v.  :

MICHAEL JAFFERAKOS,  :

              Defendant.  :
------------------------------------------------------------------X

**DECISION AND ORDER**
25-CR-332 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

Michael Jafferakos ("Defendant") moves for bond pending the conclusion of his case. Def.'s Mot. for Bond (the "Def.'s Mot.") at 1, ECF No. 43.[1]  For the reasons discussed below, Defendant's motion is DENIED.

## BACKGROUND

On September 25, 2025, the Government filed a complaint charging Defendant with sexual exploitation of children in violation of 18 U.S.C. § 2251(a). Compl. at 1 (the "Complaint"), ECF No. 1. The Complaint alleged Defendant "engaged in the production of child sexual abuse material on the internet with multiple minor victims[.]" *Id.* ¶ 3. As sworn by a Special Agent with the U.S. Department of Homeland Security (the "Agent"), upon arrest, Defendant "admitted, in sum and substance, to instructing and paying multiple minor victims" to create child sexual abuse material, primarily on behalf of his co-defendant Anthony Cina. *Id.* ¶¶ 1, 6.

According to the Agent, during an interview Defendant described interactions with a 14-year-old boy ("Minor Victim 1"). *Id.* ¶ 7. Defendant is alleged to have met Minor Victim 1 through his work as a coach and commissioner of a local basketball program run by a Catholic

---

[1] Citations are to the docket in *United States v. Jafferakos, et al.*, 25-CR-332. Page pincites refer to the ECF page numbers assigned to a filing where available, and where no ECF heading is present, to the page numbers listed in the original filing.

church in Brooklyn. *Id.* During his interview with the Agent, Defendant allegedly admitted to instructing Minor Victim 1 to create videos for Cina. *Id.* ¶ 8. The Agent reportedly identified at least two videos of Minor Victim 1 engaging in sexually explicit activities saved on Defendant's phone. *Id.* In addition to instructing Minor Victim 1 to produce explicit videos on his own, Defendant allegedly had hands-on contact with the victim, recording a video of himself giving Minor Victim 1 a massage while Minor Victim 1 was wearing only boxers. *Id.* ¶ 9. The Agent stated the metadata from Defendant's phone shows the massage video was filmed in the basement of the church building where Defendant worked. *Id.*

The Agent also described a second victim, Minor Victim 2, with whom Defendant communicated. *Id.* ¶ 10. According to the Agent, Defendant admitted to instructing and paying Minor Victim 2 to create videos similar to those created by Minor Victim 1. *Id.* ¶¶ 10–13. Upon review of Minor Victim 2's phone, police officers allegedly found at least three sexually explicit videos sent to Defendant, as well as payment to Minor Victim 2 from Defendant via Apple Pay. *Id.* ¶¶ 11–12. Defendant allegedly met Minor Victim 2 on Snapchat and offered to fly him to New York City.[2] *Id.* ¶ 10.

Defendant was arrested on September 25, 2025. *See* Sept. 25, 2025 Min. Entry. The same day, Magistrate Judge Seth D. Eichenholtz arraigned Defendant on the Complaint and held a detention hearing. *Id.* Magistrate Judge Eichenholtz found "clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community" because: 1) the offense charged involved a minor victim; 2) the weight of the evidence against Defendant was strong; 3) Defendant would be subject to a lengthy

---

[2] The Complaint indicates Defendant "offered to fly Minor Victim 1 to New York City." *Id.* ¶ 10. In context, however, the Court believes this was a clerical error and it was actually Minor Victim 2 Defendant offered to fly to New York.

period of incarceration if convicted; and 4) Defendant's release posed a serious danger to any person or to the community. Order of Detention at 3, ECF No. 2. Magistrate Judge Eichenholtz denied Defendant's bail application and ordered him detained pending trial. *See id.*

On October 22, 2025, a U.S. Grand Jury returned a now non-operative indictment against Defendant charging him with two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251. Indictment ¶¶ 1–2, ECF No. 7. The indictment also included a criminal forfeiture allegation as to both counts. *Id.* ¶¶ 3–4.

On October 29, 2025, a U.S. Grand Jury returned a now operative superseding indictment (the "Supr. Indictment" or "Superseding Indictment") against Defendant again charging him with two counts of sexual exploitation of a child, in violation of 18 U.S.C. § 2251. Supr. Indictment ¶¶ 1–2, ECF No. 9. The Superseding Indictment also named Cina as a co-defendant for Count One and included criminal forfeiture allegations as to both counts. *Id.* ¶¶ 1, 3–4. On October 30, 2025, Magistrate Judge Taryn A. Merkl arraigned Defendant on the Superseding Indictment. ECF No. 10. Defendant pled not guilty to both counts. *Id.* Magistrate Judge Merkl ordered Defendant's detention continued. *Id.* Defendant did not appeal his detention. *Id.*

On May 22, 2026, Defendant moved to be released on bond "to care for his mother while she recovers from a serious medical procedure." Def.'s Mot. at 1. In addition to the mandatory conditions set forth in the Adam Walsh Child Protection and Safety Act, Defendant proposes a "substantial bond, co-signed by [his] mother and father" as sureties and home confinement to his parent's residence until the conclusion of the case.[3] *Id.* at 1–2. Defendant states he would: 1)

---

[3] Defendant states he would remain at the family home with his parents, however he later indicates he would "[m]aintain a residence at his wife's address[.]" *Id.* at 1, 2. This is an important difference, as Defendant would not be on strict home confinement if he has to travel to his parent's house to care for his mother. This may be a clerical error, but to the extent it is not, this further cuts against Defendant's request to be released on bond.

report to Pretrial Services; 2) submit to GPS location monitoring; 3) refrain from possessing a firearm or other lethal weapon; 4) refrain from acquiring a passport or other travel documentation; 5) submit to random home and community contacts by Pretrial Services; and 8) undergo mental health treatment as directed by Pretrial Services, including with New York Counseling for Change, a treatment program for individuals with sex offense charges and convictions. *Id.* at 2. Defendant also proposes designating his parents as third party custodians pursuant to 18 U.S.C. 3142(c)(1)(B)(i), legally obligating them to supervise him and report any violations of his release to this Court. *Id.*

## DISCUSSION

### I.    LEGAL STANDARD

Under the Bail Reform Act, a district court may order pre-trial detention if it finds "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1). For cases involving a minor victim under to 18 U.S.C. § 2251, the Court must presume no such condition exists. *See id.* § 3142(e)(3)(E).

When such a presumption in favor of detention applies, "[a] defendant may nevertheless rebut that presumption with evidence that [he] is not a danger to the community or a risk of flight." *U.S. v. Valerio*, 9 F. Supp. 3d 283, 287 (E.D.N.Y. 2014) (Bianco, J.) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *see also* 18 U.S.C. § 3142(e)(2) (noting presumption is rebuttable). Even so, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes*, 254 F.3d at 436 (citing *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1986)). "At all times . . . 'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser

standard of a preponderance of the evidence that the defendant presents a risk of flight.'" *U.S. v. English*, 629 F.3d 311, 319 (2d Cir. 2011) (citing *Mercedes*, 254 F.3d at 436).

To determine whether a defendant should be detained pending trial, the Court must consider: 1) the nature and circumstances of the offense charged, including whether the offense involves a minor victim; 2) the weight of the evidence against the defendant; 3) the history and characteristics of the defendant; and 4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). As stated by the Second Circuit, this is a "flexible, fact-intensive" analysis "call[ing] on case-specific information to assess each factor's relevance[.]" *U.S. v. Zhang*, 55 F.4th 141, 150 (2d Cir. 2022).

## II.    ANALYSIS

As required by the Bail Reform Act, the Court considers each of the 18 U.S.C. § 3142(g) factors in turn.

### A. The Nature and Circumstances of the Offense Charged Favors Detention

The first § 3142(g) factor weighs heavily in favor of detention. As discussed, Defendant is subject to the statutory presumption in favor of detention because he is charged with two counts of sexual exploitation of a minor in violation of 18 U.S.C. § 2251. Supr. Indictment ¶¶ 1–2; 18 U.S.C. § 3142(e)(3)(E).

The conduct charged in this case is severe. Defendant is alleged to have preyed on at least two minor victims: one in his local community and one he identified through social media. *See* Compl. ¶¶ 7, 10. At Defendant's direction, the minor victims allegedly created at least six sexually explicit videos, including one with Defendant himself. *See id.* ¶¶ 8–9, 11. As stated in *Valerio*, "child pornography is an insidious offense since it takes advantage of a particularly vulnerable segment of society[.]" 9 F. Supp. 3d at 289 (quoting *United States v. Schenberger*, 498 F. Supp. 2d 738, 742 (D.N.J. 2007)). The "mere existence of and traffic in child

pornographic images creates the potential for many types of harm in the community and presents a clear and present danger to all children." *Id.* (quoting *United States v. MacEwan*, 445 F.3d 237, 250 (3d Cir. 2006)) (internal quotations omitted). This is particularly true where, as here, Defendant is alleged to have been physically involved in creating child sexual abuse material with Minor Victim 1. *See* Compl. ¶ 9.

As a result, the nature of the offense charged weighs in favor of Defendant's continued detention.

### B. The Weight of the Evidence Favors Detention

The evidence proffered by the Government at this stage is strong. Defendant argues "the [G]overment's claim that the accusations in the indictment are alone sufficient to warrant detention" would, in turn, "improperly require the detention of any defendant accused under 18 U.S.C. § 2251." Def.'s Mot. at 7. However, Defendant wholly ignores the Government's proffered evidence which goes beyond the allegations in the Superseding Indictment. The Court's determination of whether to release Defendant on bond is not solely based on one of the § 3142(g) factors, as explored further below.

First and foremost, Defendant allegedly admitted to the charged conduct as to both minor victims. *See* Compl. ¶ 6 ("[Defendant] admitted, in sum and substance, to instructing and paying multiple minor victims to produce child sexual abuse material over the course of the last few years[,]" and "admitted that [Cina] made these payments to [Defendant] in exchange for [Defendant's] production of child sexual abuse material[.]"); *id.* ¶ 8 ("During his interview, [Defendant] admitted to instructing Minor Victim 1 to create these videos on behalf of [Cina]"); *id.* ¶ 13 ("[Defendant] admitted to instructing Minor Victim 2 to create . . . child sexual abuse material" and "paying Minor Victim 2 for such material."); Gov't Opp'n to Def.'s Mot. (the "Gov't Opp'n") at 4, ECF No. 46 (noting Defendant's admissions).

Second, pursuant to a search warrant, the Government allegedly recovered "[a]t least nine electronic devices" from Defendant's home, including Defendant's iPhone "reveal[ing] the presence of hundreds of images and videos containing child sexual abuse materials[,] . . . many of which [Defendant] shared to a Telegram group[.]" Compl. ¶ 5; *see also* Gov't Opp'n at 3. The Government submits its investigation is "ongoing and has revealed additional evidence showing that [Defendant] targeted and contacted other minor victims[.]" Gov't Opp'n at 4.

The Court, therefore, is not relying solely on the nature of the charged offense or mere "accusations in the indictment[,]" as Defendant suggests. *See* Def.'s Mot. at 7. Defendant's alleged admission to the charged conduct and the Government's recovery of physical evidence of child sexual abuse materials strongly support his continued detention. *See, e.g., Valerio*, 9 F. Supp. 3d at 289–90 (finding the weight of the evidence "extremely strong" where defendant allegedly confessed to the crimes and sexually explicit images of minors were found on defendant's personal devices); *U.S. v. Blackman*, 22-MJ-272, 2022 WL 843735, at *3 (E.D.N.Y. Mar. 22, 2022) (Brown, J.) (describing the weight of the evidence as "persuasive" where "evidence adduced via proffer suggests [defendant] possessed thousands of images and videos, some portion of which constituted child pornography.").

### C. The History and Characteristics of Defendant Do Not Weigh in Favor of Release

When evaluating the history and characteristics of a defendant, the Court considers factors such as "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings"[,] as well as whether a defendant was—at the time of the current offense or

arrest—on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense. *See* 18 U.S.C. § 3142(g)(3)(A)–(B).

Neither the Defendant nor the Government provide extensive detail in this regard. Defense counsel notes Defendant "has strong ties to the community[,]" "is a lifelong resident of Brooklyn, and has lived in his family's home for much of his life." Def.'s Mot. at 7. He also "has extremely close ties to his parents," *id.*, and "no prior criminal history to counsel's knowledge[,]" *id.* at 6, n. 3. Defendant's parents have offered to serve as third-party custodians and sureties and are prepared to put his family home up as collateral. *See* Def.'s Mot. at 1–2.

While it is certainly positive Defendant has people to lend him support, family support on its own is insufficient to outweigh the danger Defendant would pose upon release. *See U.S. v. Garofalo*, 25-MJ-00144, 2025 WL 1311245, at *3 (E.D.N.Y. May 6, 2025) (Wicks, M.J.) (finding defendant's continual family support and his "parents, grandparents, and aunt [being] willing to act as suretors by pledging their homes, totaling a combined equity exceeding one million dollars . . .insufficient to remediate or overcome the serious risk of dangers presented by" defendant's release). Furthermore, while the Court is not apprised of the full scope of Defendant's employment history or involvement in his community, the proffered evidence in this case indicate Defendant used his previous job—as coach and commissioner of a local youth basketball league—to commit the charged conduct.

The Court finds Defendant's history and characteristics, therefore, do not weigh in favor of his release.

### D. Defendant Would Pose a Danger the Community and a Flight Risk if Released

#### 1. Danger to the Community

"Although there is no precise method or formula used to calculate a reasonable assurance of the community's safety . . . [p]ossession alone of child pornography . . . presents serious (even if not irremediable) concerns." *Id.* This is particularly true where, as here, the offense conduct "involved alleged sexual abuse of children both physically and through the deployment of remote electronic communication[.]" *Id.*

The Government argues allowing Defendant to return to his parent's home "where [he] lived prior to his arrest and engaged in the offense conduct charged" would not reasonably assure the safety of his community, particularly where Defendant's mother is recovering from a serious medical procedure and Defendant's father works full-time. Gov't Opp'n at 4–5; *see also* Def.'s Mot. at 1–2. The Court agrees.

The conduct charged in this case is closely linked to Defendant's community. Defendant allegedly used his role as coach and commissioner to a local youth basketball league to access, recruit, and abuse at least one of his minor victims. *See* Compl. ¶ 7; Gov't Opp'n at 1, 3. He also allegedly committed the sexual abuse at the local church where he worked. *Id.* ¶ 9; Gov't Opp'n at 4. This Court will not permit Defendant to return to the very setting he allegedly committed such crimes, particularly where he will have seemingly little oversight.

Furthermore, in reviewing Defendant's proposed bond package, the Court notes Defendant's failure to include any sort of limitation on his internet use upon release. *See generally* Def.'s Mot. This is, frankly, shocking given the nature of Defendant's alleged conduct. *See e.g.* Compl. ¶ 5 (describing Defendant's use of a messaging application to send child sexual abuse materials to others); *id.* ¶ 10 (detailing how Defendant allegedly contacted minors over Snapchat); Gov't Opp'n at 3–4. Defendant allegedly engaged in the production of sexually explicit videos of children and sent such material to others over the internet. *See*

*generally* Compl; Gov't Opp'n.  Put simply, "if [D]efendant has any access to any internet capable devices and/or unmonitored telephone calls (including mobile phones), he is an extreme danger to the community." *Valerio*, 9 F. Supp. 3d at 292; *see also Blackman*, 2022 WL 843735, at *5 ("This case offers something even more troubling: evidence supporting a strong inference that defendant engaged in the production of [child sexual abuse material] through the predatory conduct using social media.").

Even if Defendant were subject to conditions barring access to the internet and electronic devices, however, Defendant's danger would not be fully mitigated.  It is "extremely difficult" to monitor, to detect, or to prevent internet usage while a defendant is released on bond.  *Valerio*, 9 F. Supp. 3d at 289.  "Computers, mobile phones, tablets, etc.—the type of instrumentalities allegedly used to commit [Defendant's] crimes—are ubiquitous and easy to procure or hide, and increasingly even the lowest-level devices have internet functionality." *Id.* at 294 (rejecting bond for a defendant who agreed not to possess or access computers or other internet-capable devices while charges under 18 U.S.C. §§ 2251 and 2252 were pending).

In sum, the Court finds the Government established, by clear and convincing evidence, Defendant represents a danger to the community and no combination of conditions would reasonably assure the safety of the community or otherwise mitigate such risks.

### 2. Flight Risk

Finally, the Court finds Defendant poses a risk of flight if released on bond.  If convicted, Defendant faces a minimum term of fifteen years of incarceration.  *See* 18 U.S.C. § 2251 ("Any individual who violates, or attempts or conspires to violate, this section shall be fined under this title and imprisoned to not less than 15 nor more than 30 years[.]").  "When faced with the possibility of a significant prison term, defendants have a strong incentive to flee." *U.S. v.*

*Edwards*, 21-M-231, 2021 WL 796089, at *2 (E.D.N.Y. Mar. 2, 2021) (Kuntz, J.) (citing *United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018)).

While Defendant argues there is no risk of flight due to Defendant's "strong ties to the community" and his lifelong residence in Brooklyn, Def.'s Mot. at 7, the Government need only demonstrate a risk of flight by a preponderance of the evidence. *English*, 629 F.3d at 319. Defendant's potentially high term of incarceration, coupled with the "extremely strong evidence against him" support such a finding. *See, e.g., Valerio*, 9 F. Supp. 3d at 298. The Government has met the low bar of showing no condition or combination of conditions would reasonably assure Defendant's appearance in court.

## CONCLUSION

For the foregoing reasons, Defendant's motion for bond is **DENIED**. The Clerk of Court is respectfully directed to terminate the motions pending at ECF Nos. 43 and 44.

SO ORDERED.

/s/ WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 3, 2026
Brooklyn, New York